UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DWAYNE RAMSEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:19CV2643 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Dwayne Ramsey, a person in federal custody. On May 2, 2018, Ramsey plead guilty before this Court to the offense of Felon in Possession of a Firearm. On December 13, 2018, this Court sentenced Ramsey to the Bureau of Prisons for a term of 76 months. Ramsey's § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**I.     STATEMENT OF FACTS**

On October 12, 2017, St. Louis Metropolitan Police Department ("SLMPD") officers responded to 3835 South Spring, in the City of St. Louis, within the Eastern District of Missouri, for a flourishing.[1] Upon their arrival, officers were advised by Victim that as s/he walked by

---

1 The Statement of Facts herein has been taken in substantive part from the Statement of Facts contained in the Guilty Plea Agreement entered into between the parties and accepted by the Court

Petitioner, who was urinating on a dumpster, Petitioner pulled a revolver out of his pocket and pointed it at Victim. Petitioner then put the gun back into his pocket and walked to 3825 South Spring where officers located him. When the officers attempted to handcuff Petitioner for their safety, Petitioner quickly pulled his right hand away and attempted to reach into the front pocket of his hoodie. Petitioner continued to resist, forcing officers to tase Petitioner during the struggle. Officers ultimately detained Petitioner and seized from the front pocket of his hoodie a Smith and Wesson, .38 SPL Airweight Revolver loaded with five rounds of ammunition.

The firearm was determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, had travelled in interstate commerce during or prior to Petitioner's possession of it. Petitioner admitted that prior to October 12, 2017, he had been convicted of at least one felony crime punishable by imprisonment for a term exceeding on year.

## II.     PROCEDURAL HISTORY

As a result of the aforementioned conduct, on November 1, 2017, a federal grand jury charged Petitioner with one count of being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). DCD 1.[2] Specifically, the indictment charged:

### COUNT ONE

The Grand Jury charges that:

    On or about October 12, 2017, in the City of St. Louis, within the Eastern District of Missouri,

### DWAYNE RAMSEY,

---

on November 19, 2018. *See United States v. Dwayne Ramsey*, 4:17CR508 SNLJ ("Criminal Case"), DCD 35, ¶ 4.

[2] All citations to the District Court Docket refer to the Criminal Case unless otherwise indicated.

> the Defendant herein, having been convicted previously in a court of law of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess a firearm which previously traveled in interstate or foreign commerce during or prior to being in the Defendant's possession.
>
> In violation of Title 18, United States Code, Section 922(g)(1).

*Id.* Thereafter, Petitioner waived in writing and orally his right to file pretrial motions. DCD 28, 31.

On May 2, 2018, Petitioner pleaded guilty to the single-count indictment pursuant to a Guilty Plea Agreement (the "Agreement"). DCD 34, 35. The Agreement provided, in pertinent part:

> **3.  ELEMENTS**
>
> The Defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:
> (1) The Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;
> (2) The Defendant thereafter knowingly possessed a firearm; and
> (3) The firearm was transported across a state line at some point during or before the Defendant's possession of it.

DCD 35, ¶ 3. With respect to the United States Sentencing Guidelines ("U.S.S.G."), the parties agreed that the Base Offense Level "is found in Section 2K2.1(a) and depends on, among other things, the nature of the Defendant's criminal history and the characteristics of the firearm." *Id.* at ¶ 6(a)(1). In the Agreement, the United States also reserved its right to argue that four levels should be added pursuant to Section 2K2.1(b)(6)(B) "because the Defendant possessed a firearm in connection with another felony offense; to wit, flourishing a firearm and resisting arrest, both felony offenses under the laws of the State of Missouri." *Id.* at ¶ 6(a)(2).

Finally, pursuant to the Agreement, Petitioner agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery, and the guilty plea." *Id.* at ¶ 7(a)(1). Similarly, Petitioner agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.* at ¶ 7(b).

During the change of plea hearing, Petitioner, who was under oath, confirmed that he was satisfied with the representation he received from defense counsel, understood the consequences of pleading guilty, and had reviewed and understood the terms of the Agreement. Plea Hearing Transcript ("P. Tr."), pp. 4-6. Specifically, Petitioner admitted that he was guilty of each of the elements of the crime to which he was pleading guilty and the Statement of Facts as set forth in the Agreement. *Id.* at pp. 12-15. Petitioner also indicated defense counsel had explained and Petitioner understood the Sentencing Guidelines contained in the Agreement. *Id.* at 8-10. This Court warned, however, that it was not bound by the guidelines and that it could impose a sentence above or below the applicable guidelines range, so long as the sentence was within the statutorily prescribed penalties. *Id.* at 11-12. At the conclusion of the hearing, this Court accepted the guilty plea, finding Petitioner was competent to enter the plea; did so "freely, knowingly and voluntarily"; and admitted "the essential elements of the crime charged." *Id.* at 15.

On October 25, 2018, the Final Presentence Investigation Report ("PSR") was issued by the U.S. Probation Office. DCD 46. The PSR provided, among other things, that Petitioner's Base Offense Level was 20 pursuant to Section 2K2.1(a)(4)(A) because Petitioner "possessed a firearm subsequent to sustaining one felony conviction for a crime of violence, Vehicular Hijacking under Docket No.: 01-CF-233." *Id*. at ¶ 23. The PSR added four levels to the Base Offense Level pursuant to Section 2K2.1(b)(6) because "the firearm was possessed in connection with the felony offenses of Unlawful Use of a Weapon-Exhibiting and Resisting Arrest." *Id.* at ¶ 24. With the deduction of three levels for acceptance of responsibility, Petitioner's Total Offense Level was calculated to

be 21. *Id.* at ¶ 32. With a Criminal History Category of V, the PSR determined a sentencing guidelines range of 70 to 87 months imprisonment. *Id.* at ¶ 78. The PSR noted that had the four levels not been added to Petitioner's Base Offense Level under Section 2K2.1(b)(6), the guidelines range would be 46 to 57 months imprisonment. *Id.* at ¶ 80.

Initially, Petitioner filed written objections to the assessment of the four levels under Section 2K2.1(b)(6), arguing that Petitioner drew the firearm in self-defense and put it away "upon discovering that the person lurking behind him did not pose a threat." DCD 40. Petitioner further argued the firearm was not used to "facilitate" his resistance to his arrest. *Id.*

Nevertheless, on November 27, 2018, Petitioner moved to withdraw his objections. DCD 50. Petitioner also filed a sentencing memorandum in which he requested this Court adopt a joint recommendation of 65 months imprisonment, which he stated was the product of "full negotiation and analysis" and was a sentence "sufficient, but not greater than necessary to accomplish the sentencing objectives identified in 18 U.S.C. § 3553(a)." DCD 55.

Petitioner appeared before the Court for sentencing on December 13, 2018. DCD 57. At the outset of the hearing, this Court confirmed with Petitioner that he did not have any "additions, corrections, or objections" to the PSR. Sentencing Hearing Transcript ("S. Tr."), p. 2. Neither party having a factual or legal objection to the PSR, the Court adopted the findings of fact and legal conclusions contained therein, including the sentencing guidelines range of 70 to 87 months imprisonment. *Id*. at 2-3. Both parties then jointly recommended a below-guidelines sentence of 65 months. *Id.* at 4-5.[3] At the request of the Court, the United States explained that the parties negotiated the 65-month recommendation in exchange for the Petitioner's agreement to withdraw his objection to PSR. *Id.* at 5. Having heard argument from counsel and allocution, and in consideration of a statement submitted to the Court by the victim of the offense, this Court

---

[3] Petitioner never argued during the change of plea hearing or at sentencing that he was unaware of his prohibited status

then sentenced Petitioner to a within-guidelines sentence of 76 months imprisonment to be followed by three years of supervised release. *Id.* at 6-7; DCD 59.

Petitioner did not appeal his conviction or sentence. Rather, on September 24, 2019, Petitioner filed the instant motion for post-conviction relief. DCD 61; Civil Case, DCD 1.

## II.   PRINCIPLES GENERALLY APPLICABLE TO SECTION 2255 MOTIONS

In general, to state a claim for relief under Title 28, United States Code, Section 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962). The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964).

Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Instead, a Section 2255 cause of action is intended only to correct an error which rises to the level of a "fundamental defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427.

### A.   Ineffective Assistance of Counsel

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to Section 2255. *DeRoo v. United States*, 233 F.3d 919, 925 (8th Cir. 2000). Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the movant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d

6

1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)).

This analysis contains both a performance and prejudice prong:

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 46 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id*. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694). Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (holding there is no need to "reach the performance prong if [the court] determine[s] that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo*, 223 F.3d at 925.

With respect to the first prong, in evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," *Strickland*, 466 U.S. at 689; and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quoting *Strickland*, 466 U.S. at 689). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if that strategic decision proves unwise. *Strickland*, 466 U.S. at 690. Whether a court agrees with a defense counsel's strategy or analysis is not the test to be followed. *Rodela-Aguilar*, 596 F.3d at 464 (citing *Wing v. Sargent*, 940 F.2d 1189, 1191-92 (8th Cir.1991)).

A court, however, may not need to determine whether a movant meets the "performance" prong of the *Strickland* test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"

7

*Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998); *see also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (holding if the defendant makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

With regard to the second prong, the movant also must show that the outcome would have been different had the alleged defect been corrected. This showing must include an analysis of the probability that the relief would have been granted by the Court. *See DeRoo*, 223 F.3d at 925 (if there is no reasonable probability that the motion would have been successful, movant cannot prove prejudice); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (stating that resolution of the prejudice inquiry will depend largely on the likelihood of success if the alleged error were corrected).

### B.  Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)). In determining whether a petitioner is entitled to an evidentiary hearing, the court must consider "[a] petitioner's allegations . . . as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief." *Garcia v. United States,* 679 F.3d 1013, 1014 (8th Cir. 2012). The court need not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). No hearing is required when "the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 96, 963 (8th Cir. 2007).

### III.  ANALYSIS

Petitioner raises the following two claims for post-conviction relief: (1) ineffective assistance of counsel for withdrawing the objection to the application of Section 2K2.1(b)(6)(B) in the PSR; and (2) the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), requires vacatur of his conviction. For each of the reasons discussed below, Petitioner's claims are waived, procedurally defaulted, and/or fail on the merits.

### A. Ground One: Defense Counsel Was Not Ineffective In Withdrawing His Objection to The PSR.

In his first ground for post-conviction relief, Petitioner argues defense counsel ineffectively "instructed" him to withdraw his objection to the PSR's application of a four-level enhancement to his Base Offense Level pursuant to U.S.S.G. Section 2K2.1(b)(6)(B). As additional support for his position, Petitioner (erroneously) argues the enhancement was based on "two misdemeanor(s)." Civil Case, DCD 1 ("2255 Motion"), p. 5.

First, Petitioner's claim fails because he cannot establish that his counsel's representation was constitutionally infirm. Defense counsel's withdrawal of the objection to the PSR was based on negotiations with the United States which, in turn, agreed to recommend at sentencing a downward variance from the sentencing guidelines. Furthermore, based on the facts contained in the Agreement and PSR and admitted by Petitioner, the PSR correctly applied Section 2K2.1(b)(6)(B) to Petitioner's Base Offense Level. Therefore, defense counsel did not render ineffective assistance by failing to argue otherwise.

For the same reasons, Petitioner cannot establish prejudice. Even had counsel argued vociferously that the specific offense characteristic was inapplicable, this Court would, nonetheless, have overruled the objection and imposed the same sentence. As a result, Petitioner's claim should be denied.

### 1. U.S.S.G. Section 2K2.1(b)(6)(B)

U.S.S.G. Section 2K2.1(b)(6)(B) provides that a defendant's base offense level should be increased by four levels if the defendant used or possessed any firearm in connection with another felony offense. U.S.S.G. §2K2.1(b)(6)(B). Application Note 11 explains that the specific offense characteristic applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense . . . . " *Id.* at cmt. n. 11(A). "Another felony offense" is, in turn, defined as "any federal, state, or local offense, other than the . . . firearm possession. . . ., punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* at cmt. n. 14(C).

"In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony." *United States v. Littrell,* 557 F.3d 616, 617 (8th Cir.2009) (quoting U.S.S.G. § 2K2.1 cmt. n. 14(A)).

### 2. Performance Prong

Petitioner's claim first fails because he cannot establish that his counsel's representation was constitutionally infirm. Counsel cannot be ineffective for failing to object to a four-level enhancement at sentencing that Petitioner agreed to withdraw in exchange for a more favorable sentencing recommendation by the United States. Indeed, Petitioner never refuted trial counsel's withdrawal of his objection to the PSR or indicated during allocution that he disagreed with the negotiated joint recommendation. Instead, Petitioner apologized to the Court and the victim and stated he wished to have it all "over with." S. Tr., p. 5.

While Petitioner is apparently dissatisfied with his ultimate sentence, he does not (and cannot) now allege that the withdrawal was unknowing, coerced, or based on bad information from

defense counsel. Where a petitioner has not alleged that his waiver of a right resulted from "misunderstanding, duress, or misrepresentation by others," his representations in court "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of veracity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73 (1977).

Furthermore, both the Agreement and the Court at the plea hearing advised Petitioner the Court was not bound by any agreement between the parties. Specifically, the Court stated:

> COURT: Now I do need to advise you that the *Sentencing Guidelines*, whatever they turn out to be, are simply guidelines. And by that, I mean I can impose a sentence against that's above the *Guidelines* or a sentence that's below the *Guidelines*. Do you understand that, too?
>
> RAMSEY: Yes, sir.
>
> COURT: What I am bound by, though, is the statutory penalty. . . .
> . . .
>
> COURT: And so I'm going to consider the full range of punishment, whether it's up to 10 years or whether it's 15 to life. And then the sentence to be imposed will be in my discretion within those ranges of punishment. Do you understand all that, too?
>
> RAMSEY: Yes, sir.
>
> COURT: And knowing that, do you still wish to plead guilty then?
>
> RAMSEY: Yes, sir.

P. Tr., pp. 11-12.[4]

---

[4] To the extent Petitioner is attempting to argue that the Court breached the "sentencing agreement" between the United States and Petitioner by sentencing Petitioner to 76 months, Petitioner's claim fails, as Petitioner understood that the Court was neither bound by nor a party to the Agreement or any post-Agreement negotiations. *See, e.g.,* P. Tr., pp. 11-12; DCd 35, ¶¶ 1, 2(b), 6(f). Furthermore, in light of the record, Petitioner has not (and cannot) maintain that he was advised by defense counsel otherwise.

Finally, the most direct consequence of Petitioner's withdrawal of the objection to the PSR was that the United States did not present evidence in support of the four-level enhancement at sentencing. Although Petitioner now maintains he flourished the firearm in self-defense and that the firearm did not facilitate his resistance, he admitted to facts in the Agreement and at the plea hearing which clearly establish otherwise. *United States v. Moser*, 168 F.3d 1130, 1132 (8th Cir. 1999) (unless defendant objects to a specific factual allegation contained in the PSR, the sentencing court may accept that fact as true for sentencing purposes).[5] As a result, additional testimony at the sentencing hearing was not necessary for the automatic application of the four-level enhancement. *See* DCD 35, ¶ 4; PSR, ¶¶ 12-13.

Moreover, even if the Court were to find that the facts admitted in the Agreement and PSR were not sufficient to establish the four-level enhancement, it certainly was reasonable for defense counsel to avoid the presentation of

---

[5] Under Missouri Revised Statutes Section 571.030, a person commits the crime of unlawful use of a weapon, a Class D Felony, if he knowingly "[e]xhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030(4). The offense of unlawful use of a weapon by exhibiting, in violation of § 571.030.1(4), has three distinct elements: (1) the defendant exhibited a weapon in the presence of one or more persons, (2) he did so in an angry or threatening manner, and (3) the weapon was readily capable of lethal use. *State v. Mitchell*, 704 S.W.2d 280, 284 (Mo. Ct. App. 1986).

In assessing whether Petitioner's conduct violated this provision, the Court is to look to the Missouri Supreme Court's interpretation of the statute. *See United States v. Littrell,* 557 F.3d 616, 617–18 (looking to state supreme court decisions to determine whether defendant had committed a "felony offense" under U.S.S.G. § 2K2.1(b)(6)(B)). In that regard, under Missouri law, whether the manner of exhibition is "threatening" is to be determined objectively and not based on the victim's subjective perception of danger. *State v. Williams,* 779 S.W.2d 600, 603 (Mo.Ct.App.1989) (citing *State v. Murry,* 580 S.W.2d 555, 557 (Mo.Ct.App.1979)). Pointing a firearm at a victim can be an objective threat even if the victim testifies he did not feel threatened. *Murry,* 580 S.W.2d at 557. There is no requirement that the gun be loaded, nor is there an express requirement of a verbal threat. *See State v. Overshon,* 528 S.W.2d 142, 143 & n. 1 (Mo.Ct.App.1975).

testimony by the victim with respect to Petitioner's flourishing of a firearm and the officers with respect to Petitioner's resistance during arrest. In the context of an ineffective assistance claim, defense counsel is entitled to a strong presumption that he sought to avoid the testimony pursuant to sound defense strategy. *See Strickland,* 466 U.S. at 689 ("A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action might be considered sound trial strategy.") (internal quotation omitted). On this prong alone, the Court should dismiss Petitioner's claim.

### 3.      Prejudice Prong

Even assuming one could conclude that Petitioner's trial counsel should have maintained the objection to the four-level enhancement set forth in Section 2K2.1(b)(6)(B), Petitioner cannot establish the prejudice prong of the *Strickland* analysis. That is, Petitioner cannot establish that the outcome of his proceedings would have been different but for counsel's failure to object.

For the reasons set forth above, the four-level enhancement was supported by the facts and relevant case law. Thus, even had trial counsel objected, Petitioner cannot establish this court would have sustained the objection and removed the four-level enhancement from the sentencing calculations. Indeed, this Court would have imposed the four-level enhancement over defense counsel's objection because the facts support its application.

More importantly, Petitioner cannot establish that this Court would have sentenced him differently even had the four-level enhancement not applied. While the parties recommended a sentence below the guidelines range set forth in the PSR, the Court, nevertheless, rejected the joint recommendation and sentenced Petitioner to term of imprisonment in the middle of the guidelines

13

range. In that regard, the Court expressed its concern that Petitioner had already been to prison twice and was on supervised release for the same offense at the time of the instant arrest. S. Tr., p. 5. The Court added that "all things considered, especially in view of the statement from the victim that really sets out in a little more detail the actual offense, that a Guideline sentence would be more appropriate." *Id.* at 6.

Therefore, Petitioner is unable to establish that the outcome of his sentencing proceedings would have been different but for counsel's purportedly infirm representation. As such, Petitioner cannot meet the prejudice prong of the *Strickland* analysis, and his claim, therefore, will be denied.

**B.  Ground Two: Petitioner's Conviction Should Not Be Affected By *Rehaif*.**

Though not articulated, Petitioner appears to also assert that his conviction should be vacated in light of the United States Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019). Civil Case, DCD 1-1, pp. 3-4. In *Rehaif*, the Supreme Court held the knowledge requirement in Title 18, United States Code, Section 924(a)(2) applies not only to the defendant's possession of a firearm or ammunition, but also to his prohibited status. For example, in prosecutions under Section 922(g)(1), the United States must prove, in addition to knowing possession, that at the time of that possession, the defendant knew he previously had been convicted of a crime punishable by a term of imprisonment exceeding one year. To be clear, this requirement does not demand proof that the defendant specifically knew that he was legally prohibited from possessing a firearm.

Petitioner's claim, however, should be dismissed as waived, procedurally defaulted, and on the merits.

        **1.  Pursuant to the Agreement, Petitioner Has Waived His Right To Bring This Claim.**

Petitioner waived "all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 18, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." DCD 35, ¶ 7(b). It is well-established that a defendant may waive his or her Section 2255 rights as part of a plea agreement, so long as the waiver is made knowingly and voluntarily and its enforcement does not result in a "miscarriage of justice." *See DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000); *United States v. Andis,* 333 F.3d 886, 891 (8th Cir. 2003). Some of the components of that exception include the appeal of an illegal sentence, a sentence in violation of the terms of an agreement, or a claim asserting ineffective assistance of counsel. *Andis*, 33 F.3d at 891 (citing *DeRoo,* 223 F.3d at 923-24). Nevertheless, the Eighth Circuit has cautioned that "waivers are contractual agreements between a defendant and the Government and should not be easily voided by the courts." *Id.*

Here, Petitioner entered into the Agreement, including the provision in which he waived his right to appeal his conviction in a post-conviction proceeding, knowingly and voluntarily. Furthermore, he has not (and cannot) show that enforcement of the waiver would result in a "miscarriage of justice." To be clear, Petitioner does not allege actual innocence. Indeed, a review of the facts admitted by Petitioner in the PSR and Agreement and during the change of plea and sentencing hearings contradict any claim he could make of actual innocence.

For example, Petitioner admitted in the Agreement and during the plea colloquy that prior to the offense for which he was pleading guilty, he had been "convicted of a felony, which was punishable by imprisonment for a term exceeding one year." DCD 35, ¶ 4; P. Tr., pp. 14-15; *see also* S. Tr., p. 5. ("I would like to say I'm sorry or I apologize for any discomfort I might have on the victims or the courts. I'm just ready to get this over with so I can get back to my son and the way of living.").

In addition, the PSR issued after Petitioner pleaded guilty, but before he was sentenced,

15

and to which Petitioner did not object in pertinent part also set forth the following felony convictions:

- June 13, 2001, conviction in the St. Clair County, Illinois, Circuit Court, for vehicular hijacking and aggravated unlawful failure to obey an order to stop on or about February 19, 2001, Cause No. 01CF233;

- July 30, 2007, conviction in the Madison County, Illinois, Circuit Court, for unlawful possession of weapons by a felon on or about April 30, 2007, Cause No. 07CF992; and

- April 17, 2014, conviction in the United States District Court for the Southern District of Illinois for being a felon in possession of firearm on or about July 28, 2018.

DCD 53, ¶¶ 38, 42, 47.

Importantly, two of Petitioner's three prior felony convictions are for his unlawful possession of a firearm as a previously convicted felon. *Id.* at ¶¶ 38, 42. Furthermore, according to the PSR and court records, Petitioner served over three years of his six-year sentence with respect to his 2001 conviction for vehicular hijacking; and approximately two years of his 37-month sentence with respect to his 2014 Federal conviction for being a felon in possession of a firearm. *Id.* at ¶¶ 38, 47. Certainly, based on the nature of his prior convictions and the amount of time to which he was sentenced and incarcerated, Petitioner cannot now allege that on October 12, 2017, when he committed the instant offense for which he was convicted, that he did not know he previously had been convicted of a crime punishable by a term of imprisonment exceeding one year.

Furthermore, Petitioner fails to allege any new and reliable evidence, let alone new and reliable evidence that indicates his innocence. As a result, Petitioner has not shown (and cannot show) that in light of all the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crimes for which he was convicted. Because Petitioner has not established that a fundamental miscarriage of justice occurred, his claim

16

should be denied.

### 2. Petitioner's Claim Is Procedurally Defaulted.

The Supreme Court has made clear that a defendant may properly claim in a Section 2255 motion that, based on a court decision that resulted in a change in the law after affirmance of his conviction, his "conviction and punishment were for an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974); *see id.* at 346-47 ("There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'presents exceptional circumstances' that justify collateral relief under § 2255" (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))). Because *Rehaif* narrows the "class of persons that the law punishes" under Sections 922(g) and 924(a), it is retroactive on collateral review. *Welch v. United States*, 136 S.Ct. 1257, 1267 (2016).

However, Petitioner failed to preserve a knowledge-of-status objection in his direct proceedings or on appeal. As a result, Petitioner has procedurally defaulted such a claim in light of the general rule that claims not raised at trial or on direct appeal "may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977) (claim defaulted when no contemporaneous objection was lodged at trial); *Murray v. Carrier*, 477 U.S. 478, 490-492 (1986) (claim not raised on direct appeal is procedurally defaulted).

To overcome the procedural-default defense, Petitioner must either show both "cause" for the default and "actual prejudice" from the asserted *Rehaif* error, or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Here, Petitioner has not alleged, much less established, the requisite showing of "cause." Indeed, to the extent Petitioner attempts to invoke "futility" to satisfy the "cause" showing, the Supreme Court has held that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that time," with

17

only a narrow carve-out for a hypothetical claim that "is so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622-23 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1985)). The question presented in *Rehaif* was thoroughly and repeatedly litigated in the courts of appeals over the last three decades, and as such, it does not qualify under the novelty exception. *See, e.g., id.* at 622.

Because Petitioner cannot satisfy the "cause" showing, he must make a threshold showing of "actual innocence." *Smith v. Murray*, 477 U.S. 527, 537 (1986). The "actual innocence" exception requires Petitioner to show that it was "more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). In that regard, "'actual innocence' means factual innocence, not more legal insufficiency." *Bousley*, 523 U.S. at 623. In analyzing a claim of actual innocence, "[t]he habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup v. Delo*, 513 U.S 298, 328 (1995).

Once again, Petitioner has not alleged actual (or factual) innocence. And, for the reasons set forth above, any claim of actual innocence would fail. Accordingly, the Court should deny Petitioner's second ground for relief.

### 3. Petitioner's Claim Fails On The Merits.

To the extent Petitioner would allege ineffective assistance of counsel to circumvent the waiver in the Agreement, his claim, however, would fail under the first prong of the *Strickland* test, as "counsel [is] not required to make meritless objections under then-existing precedent, anticipate changes in the law, or raise every potentially meritorious claim." *United States v. Garza*, 340 Fed.Appx. 243, 244-45 (5th Cir. 2009) (per curiam); *Parker v. Bowersox*, 188 F.3d 923, 929

(8th Cir. 1999) (not ineffective assistance of counsel to "fail[] to anticipate a change in the law"); *United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015) (same). The opinion in *Rehaif* was issued on June 21, 2019, well after Petitioner was indicted, convicted, and sentenced in the underlying criminal case. Prior to that, every court of appeals to consider the issue, including the United States Court of Appeals for the Eighth Circuit, had determined that the knowledge requirement in Section 924(a)(2) applied only to the defendant's possession of a firearm or ammunition, not to his restricted status. *See, e.g.*, *United States v. Stein*, 712 F.3d 1038 (7th Cir. 2013) (convicted of a misdemeanor crime of domestic violence under 922(g)(9)); *United States v. Butler*, 637 F.3d 519, 523--24 (5th Cir. 2011) (dishonorable dischargee under 922(g)(6)); *United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003) (felon under 922(g)(1)); *United States v. Kafka*, 222 F.3d 1129, 1131--33 (9th Cir. 2000) (subject of a restraining order under 922(g)(8)); *United States v. Hutzell*, 217 F.3d 966, 967--68 (8th Cir. 2000) (convicted of a misdemeanor crime of domestic violence under 922(g)(9)); *United States v. Montero-Camargo*, 177 F.3d 1113, 1120 (9th Cir. 1999) (illegal alien under 922(g)(5)), opinion withdrawn, 192 F.3d 946 (9th Cir. 1999), reinstated by en banc opinion, 208 F.3d 1122, 1127 n.8 (9th Cir. 2000); *United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996) (felon under 922(g)(1)); *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc) (felon under 922(g)(1)); *United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993) (fugitive from justice under 922(g)(2)); *United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1991) (felon under 922(g)(1)); *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988) (felon under 922(g)(1)); *United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir. 1988) (felon under 922(g)(1)).

Because Petitioner cannot establish that defense counsel's performance was deficient by failing to move to dismiss the indictment on that ground, this Court will dismiss his claim. *See Pryor*, 103 F.3d at 713 (failure to satisfy both prongs of the *Strickland* analysis is fatal to the claim).

### IV.     **CONCLUSION**

For the foregoing reasons, this Court denies Ramsey's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Ramsey has not made a substantial showing of the denial of a federal constitutional right.

Dated this 2nd day of September, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE